Mrs. L. H. WARREN, a feme sole,
Appellant,

v.

Clarence McFARLANE, Executor of the
Estate of W. G. Pryor, Deceased,
et al., Appellees.

No. 3853.

Court of Civil Appeals of Texas.

Waco.

June 15, 1961.

Rehearing Denied July 5, 1961.

DeLange, Hudspeth & Pitman, Eugene J. Pitman, Houston, for appellant.

Hill, Brown, Kronzer & Abraham, W. James Kronzer, Houston, for appellees.

WILSON, Justice.

This is an appeal from judgment in a non-jury trial declaring that a deed to appellant, absolute on its face, was intended by the parties to be a mortgage on grantors' homestead as security for a loan. The court found that the only consideration for its execution was a loan by appellant of $800 for six months at 6% interest; that appellant did not communicate to grantors her intention the instrument was to be a sale, but represented to them its purpose was to secure a loan, upon which representations they relied. The deed was declared a nullity.

Appellant complains of admission in evidence of (1) a letter or note admittedly written by appellant to grantor stating the property was homestead and "Mr. Wortham told me" it could not carry a mortgage, and that she "could lend you $800.00 as you wanted for the six months", and "I can ask my attorney just what kind of paper he could draw up to make it safe for me." The letter stated appellant had other funds already loaned at 6 per cent. (2) Another note from appellant to grantor saying, "I told Bill we had made arrangements for a loan and he wanted to know who from. I didn't say, but I think he thinks it is Wortham, so let it go that way if you like." Appellant's objections that these documents were undated, and there was no evidence "tying" them to the execution of the deed, were overruled. Appellant testified that the letters were written before her attorney advised her a loan

could not be safely secured by a lien on the homestead, and that they related to negotiations for a loan from third persons. At the trial she testified that before grantors "ever mentioned a loan to me" she consulted an attorney, "and asked him if I let them have the sum of money I had on hand, what my chances would be to collect it." Appellant testified by deposition that there was "never any mention of a loan" in her dealings with grantors, "other than trying to get a loan from somebody else." She was properly permitted to offer explanation of her writings, 2 McCormick & Ray, Evidence, (2d ed.), Sec. 1128, p. 27, but the court was not bound to accept it as true. There were other circumstances in evidence authorizing the court to assign weight and probative force to these letters as admissions.

■ Error is assigned to admission of a writing by grantor on the reverse of note (2) above: "Warranty Deed Loan of $800.00. Mar. 1–6 mos. 5 perc. Sterret", over objections that there was no showing as to when it was written and that it was self-serving. Appellee offered it as res gestae, and as the statement of a party in possession against her pecuniary interest in recognizing existence of a loan, relying on statements in 1 McCormick & Ray, Evidence (2d Ed.) Sec. 922, pps. 705–706; 2 id., Secs. 1003–1011. The deed was executed March 1. We have some doubt as to admissibility of the memorandum, but it is not necessary for us to decide the point. In this trial before the court, any error in admitting evidence is not ground for reversal unless there is no other evidence to support the judgment. Williams v. Ritcheson, Tex.Civ.App., 212 S.W.2d 813, 816, writ ref.

■ Appellant says there is insufficient evidence, or none, to support the findings and judgment. Grantors, Mr. and Mrs. Pryor, were husband and wife. The husband, Bill, was 92 years old when he died (about a month after the deed was executed), and was partially blind and unable

to read. He was paralyzed and bedridden from a stroke eight years before. Appellant frequently read to him. The wife was in "bad health" and "hard of hearing", and appellant communicated with her by means of notes. They needed cash and "were asking" $15,000 for their home. Several months after the deed was executed, and after the husband's death, appellant wrote the wife, referring to the latter's financial needs, and told her it was best to get a personal loan, because "I hold the papers on the home place, so they would do you no good," and "I have not mentioned this to you since Bill passed away, for I knew you were pressed for funds." This litigation ensued.

Mr. Pryor was appellant's brother. The Pryors had paid substantial sums to appellant for nursing services during Mr. Pryor's illness of several years. Other heavy expenses had left them in financial need. They had encumbered other properties they owned and had been seeking unsuccessfully to obtain a loan of $800 from other sources when they were informed lending institutions would not make a loan "against their home." Appellant testified the deed was not the result of a loan; that grantors did not want a loan from her; they wanted to sell their home to her. She testified repeatedly by deposition, before being confronted with her letters, that from the time she learned a loan company would not make a loan, she never offered to lend grantors any money. Because Mrs. Pryor was partially deaf appellant communicated with her in writing.

The two notes referred to which she wrote to Mrs. Pryor authorized the trial court to believe, under the evidence, that after appellant was told by "Mr. Wortham" (for the lending agency to which a loan application was made) that the homestead "could not carry a mortgage", and after appellant wrote Mrs. Pryor a note saying, "I could lend you $800. as you want it for six months," and "I can ask my attorney just what kind of paper he could draw up

to make it safe for me should anything happen to you or Bill", she asked the attorney to prepare a deed; that she agreed with Mrs. Pryor to make the desired loan; that she then tendered the deed to the aged, paralyzed and nearly blind husband, Bill, for signature, as a mortgage; that she then turned to Mrs. Pryor and wrote the second note saying, "I told Bill we had made arrangements for a loan. He wanted to know who from—I didn't say but I think he thinks it is Wortham so let it go that way if you like." This, and other circumstances in evidence preclude our saying there is no evidence to support the judgment, and the record as a whole requires us to overrule appellant's other points.

Affirmed.